**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1768-16T2

IN THE MATTER OF ANTHONY
CALDARISE, NEW JERSEY STATE
PRISON, DEPARTMENT OF CORRECTIONS.

_____

Submitted March 21, 2018 — Decided  June 20, 2018

Before Judges Fuentes and Suter.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2016-1439.

Fusco & Macaluso Partners, LLC, attorneys for
appellant Anthony Caldarise (Anthony J. Fusco,
Jr., on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent Department of Corrections
(Melissa Dutton Schaffer, Assistant Attorney
General, of counsel; Jana R. DiCosmo, Deputy
Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent New Jersey Civil Service
Commission (Pamela N. Ullman, Deputy Attorney
General, on the statement in lieu of brief).

PER CURIAM

Petitioner Anthony Caldarise appeals from the November 28,

2016 final agency decision of the Civil Service Commission that

affirmed the termination of his employment by the New Jersey

Department of Corrections (DOC) for conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), after his urine test was positive for anabolic steroids. We affirm the final agency decision because it was supported by the evidence and was not arbitrary, capricious or unreasonable.

Caldarise was employed by the DOC as a senior corrections officer. On July 13, 2015, the police were called to his house on a matter unrelated to this case. His girlfriend told the police Caldarise was using steroids and showed them where the vials and syringes were kept. The police contacted the DOC. Caldarise was directed to provide a urine sample to test for anabolic steroids. He provided the sample; it was forwarded to Aegis Sciences Corporation (Aegis) in Nashville, Tennessee for testing. The sample tested positive for "exogenous testosterone," meaning that its origin was "synthetic."[1]

The DOC's preliminary notice of disciplinary action sought Caldarise's removal as a corrections officer. It charged him with conduct unbecoming a public employee, in violation of N.J.A.C. 4A:2-2.3(a)(6). A Final Notice of Disciplinary action sustained this charge, following a departmental hearing. Caldarise appealed

---

[1]  The sample exceeded the testosterone to epitestosterone ratio (T/E ratio) of six, which was the reporting threshold. Caldarise's sample reported a T/E ratio of 54.1.

to the Civil Service Commission. The case was transmitted to the Office of Administrative Law (OAL) for a hearing.

At the September 12, 2016 OAL hearing, Caldarise testified that he had taken "a host of different supplements" since playing football in high school twenty-five years ago. These were non-prescription health food supplements that he described as "testosterone boosters, [to] help you cut weight, help your body heal, different types of supplements to help your body." Caldarise submitted a letter from Dr. John A. Ricci, M.D., who did not testify, but said in the letter, that "certain [over the counter] supplements can cause elevated testosterone in particular Tribulis [t]errestris, Maca and DHEA. All have been studied and shown in sufficient dosing to raise testosterone." Caldarise also relied on journal articles, but he did not call any expert witnesses at the hearing to testify about the articles.[2]

Dr. Melinda Shelby, a Senior Scientist with Aegis, testified for the DOC that DHEA could increase the T/E ratio but not "so much that it looks like testosterone abuse."[3] Caldarise's T/E ratio of 54 was not indicative of DHEA administration. Shelby testified that DHEA had "little or no effect on the T/E ratio."

---

[2] The journal articles were not included in the record.

[3] The DOC expert witnesses relied on their certifications. These certifications were not included in the record.

According to Dr. Shelby, herbal substances such as Tribulus terrestris and Maca did not significantly increase serum testosterone and they would be endogenous or natural, not the synthetic substance found in Caldarise's urine sample. Another study cited by Dr. Shelby showed that Maca did not affect "serum hormones, including testosterone."

Lora McCord, a Lead Scientist with Aegis, testified the tests performed on the sample were consistent with the protocols of their laboratories. Caldarise's urine sample tested positive for the anabolic steroid testosterone, using two different metrics. His T/E ratio indicated the presence of synthetic testosterone.

The administrative law judge's (ALJ) initial decision on October 12, 2016, affirmed Caldarise's removal as a senior corrections officer, concluding that Caldarise "violated the rules and regulations as charged" and also that his removal from employment was "the appropriate penalty." The ALJ found that the DOC had provided the "preponderating credible evidence" and that both expert witnesses for the DOC provided "credible" testimony. He did not give any weight to Dr. Ricci's letter because the doctor did not testify nor to the journal articles, because they were not supported by expert testimony. Caldarise did not "explain away the preponderating scientific evidence supplied by Aegis, both in test results and in testimony." The ALJ found "the factual record

fits within the charges and rule and regulation violations cited in the final notice of disciplinary action." Caldarise's removal as a senior correction's officer was warranted because of the "higher standard imposed on sworn law enforcement personnel."

On November 28, 2016, the Civil Service Commission's final administrative action affirmed termination of Caldarise's employment, finding it to be justified. Caldarise appeals from the final agency decision.

On appeal Caldarise argues that the urine tests should have been barred because of the failure to follow internal affairs guidelines, to advise Caldarise of his Miranda[4] warnings and to apprise him of his rights under Weingarten.[5] He contends the final agency decision was not supported by the record and the ALJ's actions were arbitrary and capricious. He argues that removal from employment was disproportionate in light of all the circumstances. We find no merit in these arguments.

We will not set aside an agency's action unless "there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007); see also Karins v. City of Atl. City, 152

---

[4]  See Miranda v. Arizona, 384 U.S. 436 (1966).

[5]  See NLRB v. Weingarten, 420 U.S. 251 (1975).

N.J. 532, 540 (1998). We have applied such deference when reviewing determinations of the Commission, or of its predecessor agencies that have administered the civil service laws. See, e.g., Campbell v. Dep't. of Civil Serv., 39 N.J. 556, 562, 578 (1963); Falcey v. Civil Serv. Comm'n, 16 N.J. 117, 125 (1954); In re Sheriff's Officer (PC2209J), 226 N.J. Super. 17, 21-22 (App. Div. 1988).

There was substantial evidence to support the Commission's final agency decision. The urine test results showed synthetic rather than natural substances. Expert witnesses for the DOC testified the sample was positive for anabolic steroids. No one questioned the actual testing methodology or the chain of custody. Dr. Shelby testified without rebuttal that the levels detected could not have been the result of the supplements cited by Dr. Ricci. Although Caldarise claimed that these results were due to over the counter non-prescription substances, he never countered the testimony by the DOC's experts that the results did not come from supplements. The court was correct to give no weight to Dr. Ricci's letter or the journals because there was no expert testimony to support these documents.

Caldarise contends that the Attorney General's Internal Affairs Policy & Procedures were not followed or that he should have received Miranda warnings and Weingarten rights. The Attorney

6                                                              A-1768-16T2

General's Internal Affairs guidelines state that drug testing of law enforcement officers is governed by the Attorney General's Law Enforcement Drug Testing Policy. Attorney General's Internal Affairs Policy & Procedures, at 26 (Nov. 2017), http://www.nj.gov/oag/dcj/agguide/internalaffairs2000v1_2.pdf. That policy requires law enforcement officers to submit a drug test when "there exists reasonable suspicion to believe that the officer is illegally using drugs." Attorney General's Law Enforcement Drug Testing Policy, at 3 (April 2018), http://www.nj.gov/lps/dcj/njpdresources/pdfs/Drug-Test-Policy_2018-05.pdf. These guidelines do not preclude disciplinary action. Miranda did not apply because Caldarise was not in custody nor subject to interrogation. 384 U.S. at 444. Weingarten did not apply because the required testing was not an "investigatory interview." 420 U.S. at 261-62.

Caldarise argues that his termination from employment was disproportionate to the offense. Under the Attorney General's Drug Testing Policy, illegal drug use is grounds for termination. Attorney General's Law Enforcement Drug Testing Policy, at 5. Given his role as a correction's officer, his termination from employment for illegal drug use was not disproportionate. See In re Carter, 191 N.J. 474, 486 (2007) (citing Twp. of Moorestown v. Armstrong, 89 N.J. Super. 560, 566 (App. Div. 1965)) (providing

that a police officer is a "special kind of public employee" who represents the law and order to the citizenry and "must present an image of personal integrity and dependability in order to have the respect of the public"). The Civil Service Commission's decision was not arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION